JOURNAL ENTRY AND OPINION
{¶ 1} The appellant in this case is mother of two boys who were placed in permanent county custody. She appeals the grant of custody to the county. The two boys were born in 1991 and 1993. They were placed in emergency custody in July of 2000 and were adjudicated as neglected. They were placed in foster care and have remained there. The county obtained one extension of temporary custody and then filed for permanent custody in December of 2001.
 {¶ 2} When the boys were removed from their mother's custody, the home was full of garbage. The boys had not attended school regularly. When they did attend school, they were often dirty. The school kept a change of clothes for them so they could wash and be clean during the day. They did not know how to brush their teeth and had significant dental problems. They also did not know how to use the toilet and instead would relieve themselves on the floor or in the yard.
 {¶ 3} After the boys were in county custody, the county provided mother with a case plan, which required her to attend parenting classes, get a psychological evaluation, and obtain stable housing, the house the family was living in having been condemned. Once the boys were in foster care, they revealed to their foster mother and to their counselors that their teenage brother had sexually abused them while the mother had left them in his care. An assessment on the boys revealed that these claims were most likely true. The county arranged for family counseling to address this problem, but mother was uncooperative. She refused to believe the boys when they told her about the abuse, and she glared at them and chastised them for making those statements. Although the various counselors agreed that the teenage brother should be evaluated to assess the validity of the boys' claims, the county agency did not arrange for this evaluation until less than a month before the second permanent custody hearing. Because the counselor who administered the evaluation was not present to authenticate the results, this evaluation was not admitted into evidence.
 {¶ 4} During their temporary custody for over two years, the boys had several counselors and social workers. The boys were consistent in their recounting of the abuse, and they repeatedly expressed fear of being "whipped" by their mother if they were returned to her home. One boy also expressed fear of the rats in his mother's home.
 {¶ 5} Both boys had medical problems and substandard intelligence. The older boy's IQ was in the 60 range and the younger's in the 80's. Both were on psychotropic medication; the younger was also on medication for ADHD. Mother consistently denied that the boys had any special needs. Instead, she saw herself as a victim of the child welfare society.
 {¶ 6} After the boys were living with their foster mother, their grades improved. They learned proper hygiene and stated that they liked living there and wanted to stay. Their foster mother testified that she would adopt them if they were available. Although all the counselors, as well as the psychologist, stated that the boys loved their mother, they agreed that the boys did not want to live with her and it was in their best interest to stay in foster care.
 {¶ 7} In its motion for permanent custody, the county alleged that "[m]other has failed to successfully, obtain adequate housing, cooperate with a psychological assessment, and address her parenting limitations" and that the children are bonded with their foster family and afraid to return to their mother. The county also alleged that the children "are developmentally delayed and require a significant amount of nurturance [sic]."
 {¶ 8} The court's journal entry granting permanent custody to the county states in part that "the allegations of the motion have been proven by clear and convincing evidence." It also held that "the children's continued residence in or return to their home would be contrary to their best interest and welfare."
 {¶ 9} Mother appealed, stating four assignments of error, the first and second of which are interrelated and will be addressed together. They state:
"I. The trial court erred by granting permanent custody to CCDCFS when the decision was not supported by the evidence.
"II. The trial court erred in finding that permanent custody was in the best interest of the children."
 {¶ 10} Mother alleges that the trial court's primary reason for awarding custody to the county was the allegations of sexual abuse against the teenage brother. She argues that because no evaluation of him was in the record, the court lacked the evidence to support its findings. She also claims that the evidence presented failed to support the court's finding that permanent custody was in the best interest of the children.
 {¶ 11} The county must prove by clear and convincing evidence that permanent custody is in the best interest of the children and that the child cannot or should not be placed in the parent's home within a reasonable period of time. The appellate court must affirm any decision which meets these criteria. In the Matter of Thomas (Mar. 9, 2000), Cuyahoga App. Nos. 75330, 75331 75332. 2000 Ohio App. LEXIS 855.
 {¶ 12} The trial court is required to hold a hearing when it receives a permanent custody motion. R.C. 2151.414(A). It must then apply the two-pronged test, that is, whether permanent custody is in the best interest of the child, and, whether one or more of the conditions outlined in R.C. 2151.414(E) exists which would prevent the child from being placed with her parent. R.C. 2151.414 states in pertinent part:
"(B)(1) Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
"* * *
"(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.
"* * *
"(D) In determining the best interest of a child at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) or (5) of section 2151.353 [2151.35.3] or division (C) of section2151.415 [2151.41.5] of the Revised Code, the court shall consider all relevant factors, including, but not limited to, the following:
"(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
"(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
"(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
"(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
"(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.
"* * *"
 {¶ 13} In a custody hearing the court must determine whether permanent custody is in the best interest of the child. The record demonstrates the five factors listed in the statute support permanent custody. The evidence shows that the boys had a positive relationship with their foster mother, whereas they were afraid of both their mother and their teenage brother, who lived at home. The first factor thus weighs in favor of granting custody to the county. The children also told the guardian ad litem that they wished to stay in the foster home, which preference also weighs in favor of granting the county permanent custody. As previously noted, the children had been living in the foster home for over two years at the time of the second permanent custody hearing, and they were in need of a stable environment where their special needs would be addressed. The third and fourth elements, therefore, also weigh in favor of permanent custody. Four out of the five factors for determining the best interest of the children weigh in favor of permanent custody.[1]
 {¶ 14} There was evidence relating to even more statutory factors. The boys had never learned to brush their teeth and required extensive dental work once they were in foster care. The boys' vaccinations, moreover, were not up to date. Mother also failed to recognize or acknowledge their need for medication for their depression and for the younger boy's ADHD. Taking all the factors together, the court had overwhelming evidence to support permanent custody as in the best interest of the boys.
 {¶ 15} Further, the evidence showed that all the counselors,[2]
along with the psychologist who assessed the boys, determined that it was in the best interest of the boys to stay in foster care.[3] They all noted that the boys were afraid of their mother and were afraid they would be left alone with their teenage brother if they returned to the family home. They were also afraid their mother would beat them for "lying" about their teenage brother abusing them sexually. The boys were angry and frustrated that their mother did not believe them when they tried to talk to her about the abuse.
 {¶ 16} Both family counselors noted that it was detrimental to the boys' well-being that mother refused to believe them or, if the statements were not true, to even try to understand why they would make these allegations. The counselors felt that being with mother would be harmful to the boys, without her co-operation in the family counseling. The counselors also noted that the boys were well adjusted and happy in the foster home. The boys had made great progress, moreover, in their academic and social skills since living in the foster home. The foster mother testified that if the boys were available she would adopt them. The court could reasonably conclude that adoption into a stable home where they would receive proper medication and education and where their special needs would be addressed was in their best interest. If the county does not receive permanent custody, however, the boys will not be available for adoption.
 {¶ 17} The guardian ad litem requested a planned permanent living arrangement. R.C. 2151.353(A)(5)provides the following criteria for a planned permanent living arrangement:
"(A) If a child is adjudicated an abused, neglected, or dependent child, the court may make any of the following orders of disposition:
"* * *
"(5) Place the child in a planned permanent living arrangement with a public children services agency or private child placing agency, if a public children services agency or private child placing agency requests the court to place the child in a planned permanent living arrangement and if the court finds, by clear and convincing evidence, that a planned permanent living arrangement is in the best interest of the child and that one of the following exists:
"(a) The child, because of physical, mental, or psychological problems or needs, is unable to function in a family-like setting and must remain in residential or institutional care.
"(b) The parents of the child have significant physical, mental, or psychological problems and are unable to care for the child because of those problems, adoption is not in the best interest of the child, as determined in accordance with division (D) of section 2151.414 [2151.41.4] of the Revised Code, and the child retains a significant and positive relationship with a parent or relative.
"(c) The child is sixteen years of age or older, has been counseled on the permanent placement options available to the child, is unwilling to accept or unable to adapt to a permanent placement, and is in an agency program preparing the child for independent living."
 {¶ 18} The boys do not fit the first criterion, because they are functioning well in a family-like setting in the foster home. As to the second criterion, there was no evidence that mother had any significant physical, medical or psychological problems which impaired her caring for the boys. In fact, the psychologist's evaluation of her showed that except for anger issues, she did not have any major mental illness. Further, the evidence did not show that adoption was not in the best interest of the boys.
 {¶ 19} There is no written guardian ad litem report in the record, but the guardian ad litem stated in his closing argument that the children love their mother and wish to see her in supervised settings. Other counselors, social workers, and the psychologist testified, however, that the boys appeared to be very afraid of their mother, and that although they love her, they do not wish to live with her. The evidence does not, therefore, clearly support a finding that the boys have a significant and positive relationship with their mother. The second criterion is not met.[4] The court did not err, therefore, when it chose permanent custody over a planned permanent living arrangement, despite the request of the guardian ad litem. Permanent custody is in the boys' best interest.
 {¶ 20} If the court has determined that permanent custody is in the children's best interest, the court then must address whether the children cannot or should not be reunited with the parents in a reasonable time. R.C. 2151.414(F) specifically delineates fifteen factors:
"(E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 [ 2151.35.3] of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 [2151.35.3] of the Revised Code that one or more of the following exist as to each of the child's parents, the courtshall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:
"(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
"* * *
"(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness toprovide an adequate permanent home for the child;
"* * *
"(8) The parent has repeatedly withheld medical treatment or food from the child when the parent has the means to provide the treatment or food, and, in the case of withheld medical treatment, the parent withheld it for a purpose other than to treat the physical or mental illness or defect of the child by spiritual means through prayer alone in accordance with the tenets of a recognized religious body.
"* * *
"(14) The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or toprevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect.
"(15) The parent has committed abuse as described in section 2151.031
[2151.03.1] of the Revised Code against the child or caused or allowed the child to suffer neglect as described in section 2151.03 of the Revised Code, and the court determines that the seriousness, nature, orlikelihood of recurrence of the abuse or neglect makes the child'splacement with the child's parent a threat to the child's safety.
"(16) Any other factor the court considers relevant." (Emphasis added.)
 {¶ 21} If any factor is present, the court is required to enter a finding that the children cannot or should not be placed with the parents.
 {¶ 22} Several of these factors are present in the case at bar. First, mother failed to cooperate in family counseling, which the county required for reunification. Although she attended the sessions, she refused to even consider the possibility that the boys were telling the truth about their teenage brother's abusing them. The second family counselor tried to explain to the mother the importance of listening and being open-minded, but mother was unreceptive. Both the family counselors believed that without mother being open to addressing this issue, the children would be harmed further.
 {¶ 23} Mother's refusal to address the sex abuse issue also shows that the fourth factor is present. She has not provided an adequate permanent home for the children, because the boys are living in fear of sexual assault. Similarly, mother has demonstrated that she is unwilling to prevent the children from suffering sexual abuse at the hands of their brother. Although abuse was not proven through an examination of the teenage brother, all the counselors testified that the boys' recounting of it was consistent and that the boys' behavior was consistent with that of a victim of sexual abuse. The evidence was sufficient to require mother to take steps to protect the younger boys. She did not, however.
 {¶ 24} Finally, the court may consider "any other factor the court considers relevant." R.C. 2151.414(E)(1). The court specifically stated at the hearing that it was considering mother's failure to recognize the boys' special needs. The foster home where the boys lived was specially certified for dealing with children with special needs. The record contains sufficient evidence, moreover, to show by clear and convincing evidence that the boys could not be reunited with their mother in a reasonable period of time. Accordingly, the first two assignments of error are without merit.
 {¶ 25} For her third assignment of error, mother states:
"III. The trial court erred by allowing inadmissible and prejudicial hearsay during the permanent custody hearing."
 {¶ 26} Mother argues that much of the testimony was inadmissible hearsay. Unfortunately, however, mother generally failed to cite any portions of the record in her argument in the brief. The only reference she makes to the record is the judge's announced decision that she does not recognize her children's special needs as they are outlined in a doctor's report. She did not, however, object to the introduction of that report. "It is not the duty of an appellate court to search the record for evidence to support an appellant's argument as to any alleged error."State v. Watson (1998), 126 Ohio App.3d 316, 321; App.R. 12(A)(2). In her recitation of facts, mother did reference the testimony of the first social worker and the foster mother as being hearsay but she does not argue these instances in her brief. Under this assignment of error, mother cites only page 154 of the transcript. She states that the judge used hearsay information "as a basis for granting permanent custody. The allegation that [mother] somehow allowed [teenage brother] to sexually molest his brothers and [mother's] eventual failure to believe the allegations were the sole basis for the judge's decision." Appellant's brief at 15-16. Mother fails, however, to specify what testimony she considers to be hearsay or why it is not admissible.
 {¶ 27} Mother misstates the court's reasons for granting custody. The court also cited the boys' fear of their mother, her failure to recognize their special needs, her tardiness in attending the hearing, and her failure to attend to their medical needs as demonstrating her failure to be committed to the boys.
 {¶ 28} Even if any alleged hearsay[5] were eliminated from the record, the treating social workers and psychologist's observations were admissible and provided more than enough evidence to support the court's findings. Evid.R. 803(4). The third assignment of error is without merit.
 {¶ 29} For her fourth assignment of error, mother states:
"IV. Appellant was denied his [sic] effective assistance of counsel when his [sic] attorney failed to properly lay the foundation for an exhibit."
 {¶ 30} Mother argues that her counsel was ineffective because she failed to lay the proper foundation for the teenage brother's sexual offender evaluation, and, as a result, the court refused to admit it. To prevail on a claim of ineffective assistance of counsel, she must show both that her counsel's representation was deficient and, second, that but for this deficiency the outcome of the hearing would have been different. Strickland v. Washington (1984), 466 U.S. 668; State v.Bradley (1989), 42 Ohio St.3d 136.
 {¶ 31} In order to assess whether the failure of counsel to ensure the admission of this evidence was prejudicial, however, this court must be able to see the evidence. Mother claims, "[s]hould the exhibit have been allowed it may have provided evidence that [the teenage brother] was not a sex offender as was commonly believed by all the witnesses." She did not proffer the evidence into the record, as required by Evid.R. 103, which states in pertinent part, "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected and * * * [i]n case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer or was apparent from the context within which the questions were asked." Evid.R. 103(A)(2). Mother does not even claim in her brief that the report she wanted introduced was favorable. If it was her evidence, and was to be introduced to show that the teenage brother was not a sex offender, mother's brief should at least have stated that the report would have shown that.
 {¶ 32} Additionally, the court's decision was predicated on more than the allegations of abuse. It also gave great weight to mother's failure to acknowledge the boys' special needs, her failure to address their medical needs, and her lack of commitment to the boys. The fourth assignment of error is without merit.
Affirmed.
It is ordered that appellees recover of appellant their costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Frank D. Celebrezze, Jr., P.J., and Sean C. Gallagher, J., concur.
[1] The fifth element covers a number of factors outlined under numbers 7 through 11 of subheading (E) of this section. See infra p. 11.
[2] Mother presented the testimony of a counselor from "Informing Our Children Incorporated," who testified that she believed it was in the best interest of the children to be reunited with their mother. This counselor testified that her organization is one which parents can contact for help in regaining custody of their children. She did not state what qualifications the organization had for providing theses services.
[3] Even the guardian ad litem admitted that the children were better off in the foster home, although he requested the court to put the children into a permanent planned living arrangement because he felt they were bonded with their mother and they wished to retain contact with her. The guardian ad litem noted that the children wished to see their mother and teenage brother "under supervised conditions."
[4] The third criterion applies only to children who are over the age of sixteen and therefore does not apply here.
[5] The mother appears to be claiming some of the testimony of the social workers and psychologists was hearsay, although she does not point this court to any specific testimony.